UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TERRY RAGLAND,

       Petitioner,

v.                     Case No: 2:16-cv-457-FtM-29MRM

SECRETARY, DOC,

       Respondent.

_____

## OPINION AND ORDER

This matter comes before the Court on Petitioner Terry Ragland's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. #1) filed on June 13, 2016. The Respondent Secretary of the Department of Corrections (DOC) filed her Response (Doc. #10) on December 23, 2016. Petitioner filed his Reply (Doc. #16) on March 10, 2017. The Petition is briefed and ripe for the Court's review. For the reasons set forth below the Court denies the Petition.

## I.

Petitioner was charged with second-degree murder with a firearm (Count I), attempted home invasion robbery with a firearm causing death or great bodily harm (Count II), and first-degree burglary while armed (Count III). (Ex. 1, Vol. 1 at 20-22). Petitioner was noticed as a habitual felony offender (Ex. 1, Vol. I at 31). On February 8, 2012, the jury returned a verdict of

guilty on all three counts. (Ex. 1, Vol. VII at 162-163). The burglary count was vacated on double jeopardy grounds. Petitioner was sentenced on April 11, 2012, to life in prison on the second-degree murder Count I, to run concurrently with the thirty-year prison sentence entered on the attempted home invasion robbery Count II. Petitioner was designated as a habitual felony offender (Ex. 1, Vol. VIII 8 at 355-362; Vol. IX at 418-428).

Petitioner appealed his conviction and sentences to the Second District Court of Appeal. (Ex. 2). The Second District Court of Appeal affirmed per curium. Ragland v. State, 121 So. 3d 47 (Fla. 2d DCA 2013) (Table).

On June 11, 2014, Petitioner filed a Rule 3.850 post-conviction motion raising nine claims of ineffective assistance of counsel. On September 8, 2015, the Post-Conviction Court denied Petitioner's Rule 3.850 Motion. Petitioner then appealed to the Second District Court of Appeal which affirmed per curium and mandate issued on April 28, 2016. Ragland v. State, 189 So. 3d 71 (Fla. 2d DCA 2016) (Table);(Ex. 10). Petitioner now files the instant Petition. Respondent concedes the Petition is timely filed in this Court but argues Grounds Ten and Eleven are unexhausted and procedurally barred.

## II.

### a. The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted

regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 572 U.S. 415, 419 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. White, 572 U.S. 419; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply", Id. at 531 (quoting Williams, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155. Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." White, 572 U.S. at 419 (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" Miller-El v. Cockrell, 537 U.S. 322,

340 (2003) (dictum).  When reviewing a claim under § 2254(d), a federal court must remember that any "determination of a factual issue made by a State court shall be presumed to be correct [,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see, e.g., Burt v. Titlow, 571 U.S. 12, 15-16 (2013); Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b. Standard for Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 571 U.S. at 13 (citing Cullen v. Pinholster, 563 U.S. 170, 189 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms."

Strickland, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

**c. Exhaustion and Procedural Default**

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural

grounds under state law. Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999).  To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it

is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324.

**III.**

Petitioner brings eleven grounds for relief.

### *Ground One*

Petitioner alleges Trial Counsel was ineffective for making deliberate or misleading remarks during his opening statement regarding what the evidence would establish. Trial Counsel stated:

> The State will be presenting several witnesses. Pay attention to what they don't have. I expect the State's evidence is not going to show that Mr. Ragland was involved in this crime. There is not any physical evidence. I don't think you'll hear any physical evidence of him being there," and "You are not going to hear any evidence of him being there. Their cases [sic] is going to come down to one young man named Zach.

(Doc. #1 at 4; Ex. 9, Vol. III at 258-59). Petitioner claims the trial evidence refuted Trial Counsel's opening especially the testimony of Zach Holmes which placed him at the scene. (Doc. #1 at 4). Respondent counters that Trial Counsel's opening statement did not mislead the jury so there is no prejudice under Strickland.

Petitioner filed a Rule 3.850 motion which the Post-Conviction Court denied, finding:

> In the first allegation, Defendant alleges that counsel was ineffective for making misleading comments during opening statement concerning the evidence. Specifically, Defendant alleges that counsel made misrepresentations to the jury when he said that the jury would not hear about any physical evidence showing that Defendant was involved in the crime, except for the testimony of one witness, named Zachary Holmes. *See* Defendant's motion p. 4. However, Defendant submits that besides Holmes' testimony, the State also presented the testimony of Jamie Thorpe, Michael Holmes, Ralph Goodwin, and Detective Christy Ellis, who all presented incriminating testimony against Defendant. Defendant concludes that counsel's misleading opening remarks, that Defendant was not at the scene of the crime, likely led the jury to believe counsel was purposely deceiving them in light of [the] fact that counsel provided no other defense than denial.
>
> As the State points out, and a review of defense counsel's opening statement reveals, counsel was not "purposely deceiving" the jury. See Court Exhibit C, Defense's Opening Argument Pp. Vol. II, pp. 258-259 of the trial transcript, attached hereto. In the usual manner, counsel presented an overview of the defense's version of the case to the jury. Furthermore, counsel did not misstate the fact that there was no physical evidence introduced by the State that put Defendant at the scene of the crime. The victim's girlfriend only identified the codefendant as one of the perpetrators not Defendant. Because counsel's opening statement was, in fact, a true representation of the evidence or lack of evidence against Defendant, Defendant's allegation that counsel purposely misled the

> jury is without merit and conclusively refuted
> by the record.

(Ex. 9, Vol. I at 653-54).  The Second District Court of Appeal affirmed per curium.

Eliminating Trial Counsel's opening statement would not have changed the outcome of the trial because the evidence mentioned in the opening statement was accurately presented.  Accordingly, Trial Counsel's opening statement did not rise to the level of ineffective assistance because there was neither deficient performance nor prejudice under Strickland.

### Ground Two

Petitioner alleges Trial Counsel rendered ineffective assistance of counsel by failing to request a special jury instruction under the independent act doctrine.  Petitioner argues the evidence supports an independent act jury instruction because the murder of the victim was outside the original design of the planned robbery.  Respondent replies that Petitioner admitted to the common plan to commit an armed robbery, of which he was a willing participant and that the evidence refuted Petitioner's claim he did not know that a firearm would be used.

Under Florida law, the independent act doctrine applies "when one co-felon, who previously participated in a common plan, does not participate in acts committed by his co-felon, 'which fall outside of, and are foreign to, the common design of the original collaboration.'" Ray v. State, 755 So. 2d 604, 609 (Fla. 2000)

(quoting <u>Ward v. State</u>, 568 So. 2d 452, 453 (Fla. 3d DCA 1990)).

Under these limited circumstances, "a defendant whose co-felon exceeds the scope of the original plan is exonerated from any punishment imposed as a result of the independent act." <u>Id.</u>

Petitioner filed a Rule 3.850 motion which the Post-Conviction Court denied, finding:

> In the second allegation, Defendant alleges that counsel was ineffective for failing to request a special jury instruction based on the independent act doctrine embodied in the standard jury instructions on principals and independent acts where evidence existed to support the instruction. Specifically, Defendant alleges that counsel should have advised or consulted Defendant concerning this defense and failing to request the instruction, Therefore, Defendant maintains that counsel was ineffective for failing to pursue an independent act theory, which also impacted Defendant's decision not to testify. Defendant further alleges that had counsel pursued this defense, he would have testified in order to show that his co-felon acted outside the original plan or collaboration, which was to take drugs or money with non-deadly force.
>
> In regard to the second allegation, as the State points out, Defendant was not entitled to an independent act instruction, therefore, he cannot show prejudice. Where a defendant was a willing participant in the underlying felony and the murder is a result of forces they set in motion, no independent act instruction is appropriate. <u>Ray v. State</u>, 775 So. 2d 604, 609 (Fla. 2000). In fact, even Defendant admits that the State could have refuted the independent act theory because "Jamie Thorpe testified that the assailants both bad guns upon entering and pistol-whipped Eric...." <u>See</u> Defendant's motion p. 10.

> Moreover, nor did Defendant abandon the robbery upon seeing his co-felon holding a gun. Trial testimony shows that during the entire episode Defendant continued as an active participant in the robbery and resulting murder. Based on the foregoing, counsel could not have been ineffective for failing to request an inappropriate instruction.

(Ex. 9, Vol. I at 654-55). The Second District Court of Appeal affirmed per curium.

Petitioner's claim is not supported by the evidence from the record. Trial witness Zachary Holmes was in the vehicle with the Petitioner and his Co-Defendant as they drove to the victim's residence on the night of the murder. (Ex. 9, Vol. III at 391). Holmes told Cape Coral Police that Petitioner and his Co-Defendant said they were going to commit a robbery and offered him money to guide him to the victim's residence. (Ex. 9, Vol. III at 404-05).

Jamie Thorpe, an eyewitness to the robbery who was present during the murder, testified that she and the victim were at home after 2:00 a.m. when two men dressed in black wearing masks entered their home through the front door. Thorpe testified:

Q. "then what happened"

A. "I saw two men in black covered from head to toe."

Q. "Did they say anything?"

A. "Where's the money? Where's the bag of drugs? Where's the money?"

Q. "Okay. Were they wearing masks?"

- 13 -

A. "Yes." . . .

Q. "Were they holding anything?"

A. "Guns."

Q. "Once they came in the door and started demanding money and drugs, what happened?"

A. "[the victim] said, I don't know what you're talking about. I don't have anything. I don't have anything. I don't know what you're talking about. Um [the victim] was hit.  He fell to his knees."

Q. "How was [the victim] hit?"

A. "He was pistol-whipped, with a gun."

Q. "What does it mean to be pistol-whipped?"

A. "Pistol-whipped means to be hit with the butt of the gun."

Q. "And what part of his body was struck with the gun?"

A. His face.  His head."

(Ex. 9, Vol. III at 267).

Thorpe continued that after pistol whipping the victim, one assailant [Petitioner] tased the victim. (Ex. 9, Vol. III at 268). The victim said he would give them what they were after and took the assailants to the back bedroom. (Ex. 9, Vol. III at 270-71). Thorpe heard a scuffle and a loud pop she believed to be gun fire. (Ex. 9, Vol. III at 271).  The victim was shot once in the chest. The assailants then threaten Thorpe and her child with a gun. (Ex. 9, Vol. III at 273-74).  After a quick search of the residence,

the assailants fled.

The trial testimony of Thorpe and Zach Holmes shows Petitioner was a willing participant in the underlying armed robbery and the murder resulted of forces Petitioner set in motion by planning and participating in the crime. Petitioner never indicated, and there is no evidence to suggest, that Petitioner tried to flee the scene or dissuade his Co-Defendant from using a gun during the commission of the crime.

An independent doctrine jury instruction would have been improper. Since Petitioner was not entitled to the jury instruction, Trial Counsel was not constitutionally ineffective for failing to assert a meritless argument. Denson v. United States, 804 F. 3d 1339, 1342 (11th Cir. 2015).

### *Ground Three*

Petitioner contends that Trial Counsel "rendered ineffective assistance of counsel by failing to file a motion in limine and/or object to the testimony of Detective Christie Ellis regarding evidence/inferences of other suspects who were investigated and excluded, excepting [Petitioner] and his Co-Felon; also the mention of tips the police received without laying a proper foundation."

Respondent argues that given the evidence in the State court proceeding Petitioner failed to establish the adjudication resulted in a decision contrary to, or involved an unreasonable

application of, clearly established Supreme Court law, or resulted in a decision based on an unreasonable determination of the facts.

Detective Ellis testified that she investigated numerous individuals that had conflicts with the victim but cleared everyone but Petitioner and his Co-Defendant. (Ex. 9, Vol. III at 479-503). Petitioner filed a Rule 3.850 motion regarding Trial Counsel's failure to file a motion in limine to exclude Detective Ellis' testimony.

The Post-Conviction Court held:

> In the third allegation, Defendant alleges that counsel was ineffective for failing to file a motion in limine or contemporaneously object to testimony from the case agent, Detective Christy Ellis, regarding the extent of the police investigation in this matter. Specifically, Defendant alleges that Ellis's testimony that other suspects were investigated and excluded, and that law enforcement received numerous tips and other information that validated Defendant and his co-felon as perpetrators of the crime. Defendant further alleges that these improper remarks, which concluded Defendant's guilt, were admitted without the proper foundation and "improperly tipped the scales in the State's favor, leading to the verdict." *See* footnote 7, p. 13 of Defendant's motion.

> Contrary to Defendant's allegations in issue three, the record demonstrates that the questions asked by the State were proper direct examination questions. Furthermore, counsel did object during Ellis's testimony when it was proper to do so. See Court Exhibit D, Christy Ellis's trial testimony, Vol. III, pp. 479-503 of the trial transcript, attached hereto. Ellis was given specific names of people by Thorpe, who Thorpe believed had a

> conflict with the victim. The questions to
> Ellis were both relevant and admissible.
> Therefore, Defendant's allegations in issue
> three are conclusively refuted by the record.

(Ex. 9, Vol. I at 655-56). The Second District Court of Appeal

affirmed per curium.

A review of the record shows that Trial Counsel objected at

trial to Detective Ellis' testimony.

> Q. "And though out the course of that
> day, July 10th of 2010, did you follow up in
> the people who Ms. Thorpe had provided to you
> as potential suspects in this case?"
>
> A. "Yes. I'm not sure if it was that
> Saturday or if it was later on Sunday, but.
> Yes."
>
> Q. "And throughout the course of this
> investigation, were you able to eliminate
> those people that Ms. Thorpe had initially
> mentioned to you as possible suspects in the
> case?"
>
> Objection: "I'm going to object, hearsay
> Judge."
>
> Judge: "Overruled."
>
> A. "Yes, we were."

(Ex. 9, Vol. III at 487).

And again, when Detective Ellis testified about Thorpe's

identification of Petitioner's Co-Defendant, Trial Counsel

objected.

> Q. "Was a photo line-up eventually put together
> containing a picture of TJ Tuttle"
>
> A. "Yes."

Q. "Was that shown to Ms. Thorpe to make any identification in that photo lineup?"

A. "Yes she identified one of the suspects as Timothy Tuttle, also known as TJ Tuttle."

Q. "Were you able to determine a relationship existing between Michael Homes, his son Zachary and the Ragland family, including Tommy and Terry Raglan?"

A. "Yes."

Q. "What was that relationship?"

Objection: "Hearsay."

Judge: "Overruled."

Thus, Trial Counsel did object to the testimony of Detective Ellis.

Although Petitioner argues Trial Counsel should have filed a motion in limine preventing Detective Ellis' from testifying, whether to file a motion in limine is a strategic decision. Here, Trial Counsel's decision not to file a motion inline was reasonable and did not result in prejudice to Petitioner. The questions Ellis was asked were relevant, and Trial Counsel's objections were overruled, and there is no suggestion that a motion in limine would have resulted in a different ruling by the court. Consequently, Trial Counsel's decision to not file a motion in limine was not ineffective assistance under the <u>Strickland</u>.

### *Ground Four*

Petitioner claims Trial Counsel was ineffective by failing to object and move for a mistrial during eyewitness Jamie Thorpe's testimony because it was highly prejudicial. The Respondent

counters that Thorpe's testimony was relevant to events that took place in the residence during the robbery.

In denying Petitioner's Rule 3.850 motion, the Post-Conviction Court reasoned:

> In the fourth allegation, Defendant alleges that counsel was ineffective for failing to object, move for a mistrial, or impeach Jamie Thorpe's prejudicial testimony with her prior inconsistent statements. Specifically, Defendant alleges that Thorpe's pretrial testimony that "one of the men that was in my house went in his room and put a gun on him" should have been used to impeach her trial testimony one of the gunmen had a gun on her 19 month old son "[i]n his face, pretty much in his mouth." Defendant alleges that this statement, by itself, could have caused the jury to want a conviction regardless of the circumstances. In addition, Defendant alleges that Thorpe could have been impeached with her conflicting prior statements concerning the height and weight of the perpetrators and the location of the victim in the house when he was shot. Defendant submits that these omissions by counsel clearly were prejudicial since Thorpe was the only actual eyewitness to the home invasion. Defendant further alleges that Thorpe had a motive to lie since "the entire episode could have been a drug deal gone bad..." *See* Defendant's motion p. 19.

> As the State points out, Thorpe's statements concerning the fact that one of the defendants held a gun on her son were not inconsistent statements. She was only more specific at trial as to where the gun was positioned. While Defendant may feel that this specific statement unjustly prejudiced him, the statement was made as a recollection of ongoing events by Thorpe that took place during the robbery and murder. Also, contrary to Defendant's allegations, counsel did, in fact, try to discredit Thorpe and her

> testimony during cross-examination. *See* Court
> Exhibit E, Jamie Thorpe's trial testimony Vol.
> II, pp. 261-296 of the trial transcript,
> attached hereto. Therefore, Defendants fourth
> allegation is without merit.

(Ex. 9, Vol I at 656-67).

A review of Thorpe's testimony shows that Trial Counsel tried to impeach Thorpe's credibility during cross examination. Thorpe was impeached regarding whether she knew of the victim's drug dealing and whether she had ever aided the victim's drug activities. (Ex. 9, Vol. III at 280-82; 282-84). Trial Counsel also impeached Thorpe's identification testimony with a video of her description of the assailants' height, eye color, and build to the police sketch artist. (Ex. 9, Vol. III at 289-93).

Thorpe's testimony was not unduly prejudicial because she merely testified to Petitioner's actions at her residence during the robbery. Thorpe's testimony was relevant and aided the jury in determining Petitioner's guilt or innocence, so the probative value of Thorpe's testimony substantially outweighed any prejudice to the Petitioner. See United States v. Edouard, 485 F.3d 1324, 1346 (11th Cir. 2007) (holding "[I]n a criminal trial relevant evidence is inherently prejudicial; it is only when unfair prejudice substantially outweighs probative value that the rule permits exclusion."). Consequently, a motion for mistrial on this ground would have been meritless and it is not deficient

performance to fail to make a meritless motion. <u>Denson</u>, 804 F. 3d at 1342.

### *Ground Five*

Petitioner alleges ineffective assistance of counsel because Trial Counsel failed to advise him of a viable defense — the independent act doctrine — and that the failure of counsel to discuss this defense with him prevented him from making an informed decision about whether to testify.

Petitioner filed a Rule 3.850 motion which was denied by the Post-Conviction Court as follows:

> In the fifth allegation, Defendant alleges that counsel was ineffective for failing to advise Defendant of a viable defense, thereby, preventing Defendant from making a fully informed decision regarding his right to testify. This allegation is again referring to the independent act theory. While Defendant admits going to the victim's house to rob him of drugs, money, or both, and tasering the victim, Defendant alleges that he abandoned the robbery after his co-defendant, Tuttle, pulled out a gun and began pistol whipping Eric, the victim. Defendant further submits that he was waiting outside near the truck when he heard a shot fired and that he had no knowledge nor did he intend to commit an aggravated battery or murder. Therefore, Defendant concludes that counsel was ineffective for failing to pursue an available defense to the charges, However, as pointed out in paragraph 7, Defendant was not entitled to the independent act instruction or "theory" based on the evidence. Moreover, Defendant's recollection of events is contrary to the evidence. In any event, counsel could not have been ineffective for failing to advise

> Defendant about a theory that was not a viable
> defense based on the evidence.

(Ex. 9, Vol. I at 657).   The Second District Court of Appeal affirmed _per_ _curium_.

As discussed by the Court above, Petitioner was not entitled to an independent act jury instruction because the evidence established Petitioner was a willing participant in the underlying armed robbery and the murder was the result of forces he helped set in motion by planning and participating in the crime. _See_ _supra_ at 12.   An independent act defense would have been meritless, and counsel is not constitutionally ineffective for failing to advise Petitioner about a meritless defense. _Denson_, 804 F. 3d at 1342.

### *Ground Six*

Petitioner argues that he received ineffective assistance of Counsel because Trial Counsel did not move to suppress the tainted or prejudicial identification testimony of Jamie Thorpe, who identified Petitioner's Co-Defendant T.J. Tuttle.   Petitioner argues the Prosecutor used Petitioner's connection to Tuttle during closing arguments to connect him to the crime scene. Petitioner claims that Trial Counsel owed him a duty to suppress Thorpe's identification of Tuttle.

Respondent argues that given the evidence in the State court proceeding the claim was adjudicated on the merits in State Court and Petitioner failed to establish the adjudication resulted in a

decision contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or resulted in a decision based on an unreasonable determination of the facts.

Thorpe testified that she saw Tuttle's face because his mask was pulled up during a scuffle with the victim. (Ex. 9, Vol. III at 270-71). During her testimony, Thorpe did not identify the Co-Defendant other than to say he was not in the courtroom. However, Detective Ellis testified that Thorpe provided her with a description of Tuttle who was one of the assailants and she used Petitioner's connection to Tuttle and the testimony of Zachary Holmes — another participant in the crime — to place Petitioner at the crime scene. (Ex. 9, Vol. III at 490-91).

In denying Petitioner's Rule 3.850 motion, the Post-Conviction Court stated:

> In the sixth allegation, Defendant alleges that counsel was ineffective for failing to move to suppress Thorpe's prejudicial identification of Defendant's co-defendant Tuttle, which "was the only evidence, per se, absent the testimony of Zachary Holmes that connected Ragland to the crime." See Defendant's motion pp. 24-25. Defendant further alleges that her identification of Tuttle was paramount in putting Defendant at the scene. As the State points out, Defendant fails to allege any viable grounds for moving to suppress Thorpe's identification of co-defendant Tuttle. In order to file a motion to suppress, counsel would have to show that Defendant's Fourth Amendment rights were violated, which was not the case in this instance. Zakzewski v. State, 866 So. 2d 688, 694 (Fla. 2001). Therefore, counsel could not

> have been ineffective for failing to raise a
> meritless issue. <u>Schoenwetter v. State</u>, 46 So.
> 3d 535, 546 (Fla. 2010).

(Ex. 9, Vol. I at 657-58).  The Second District Court of Appeal affirmed <u>per</u> <u>curium</u>.

Petitioner fails to state a cognizable ineffective assistance claim.  An individual can urge suppression of evidence only if his Fourth Amendment rights were violated by the challenged search or seizure. <u>United States v. Padilla</u>, 508 U.S. 77, 81 (1993); <u>Alderman v. United States</u>, 394 U.S. 165, 171-72(1969). Fourth Amendment rights are personal and cannot be vicariously asserted. <u>United States v. Payner</u>, 447 U.S. 727, 731 (1980); <u>United States v. Ramos</u>, 12 F.3d 1019, 1023 (11th Cir. 1994).  Petitioner fails to show how his Fourth Amendment rights were violated by Thorpe's identification of Tuttle, and no other constitutional violation is established.  A motion to suppress based on Thorpe's identification of Tuttle would have been meritless and it is not deficient performance to fail to make a meritless motion. <u>Denson</u>, 804 F. 3d at 1342.

### *Ground Seven*

Petitioner claims ineffective assistance of counsel because Trial Counsel failed to object to improper remarks made during the prosecution's closing argument.  Respondent claims that given the evidence in the State court proceeding Ground Seven was adjudicated on the merits in State Court and that Petitioner failed to

establish the adjudication was contrary to or involved an unreasonable application of, clearly established Supreme Court law, or resulted in a decision based on an unreasonable determination of the facts.

The Post-Conviction Court reviewed the prosecutor's statements and found:

> In the seventh allegation, Defendant alleges that counsel was ineffective for failing to object to improper comments made by the State during closing arguments. Specifically, Defendant alleges that the State's remark that "you shoot someone in the back that pretty much qualifies" to demonstrate a depraved mind was a misstatement of the law. *See* Defendant's motion p. 27. Defendant further alleges that the actual shooter, who was convicted in a separate trial, was only convicted of manslaughter. Defendant also alleges that the State's comments that "Eric was killed in front of his son" and "[t]hey turned a living father into a dead man" were highly prejudicial, along with the statement that "He's guilty, its [sic] been proven." *See* Defendant's motion p. 28. Defendant states that the prosecutor was giving his personal opinion on the evidence and bolstered the testimony of the Cape Coral Police Department Defendant submits that all of the aforementioned comments should have been objected to by counsel.
>
> In order to satisfy the first prong of <u>Strickland</u>, Defendant must show that counsel made an error so serious that he was not functioning as counsel guaranteed by the Sixth Amendment. The Court has reviewed the State's closing argument and finds nothing improper in the comments made by the State. *See* Court Exhibit F, State's Closing Argument, Vol. IV, pp. 637-650 and 660-665 of the trial transcript, attached hereto. Furthermore,

attorneys have a degree of latitude in
fashioning closing arguments and can advance
all legitimate arguments that can be inferred
from the evidence. Matthews v. State, 834 So.
2d 900, 901 (Fla. 4th DCA 2003). Therefore,
counsel could not have been ineffective for
failing to object or to raise a meritless
issue. Schoenwetter, at 546.

Ex. 9, Vol. I at 658-59). The Second District Court of Appeal

affirmed per curium.

Attorneys are given wide latitude during closing argument "to

review the evidence and to explicate those inferences which may

reasonably be drawn from the evidence." Owens v. Sec'y, Fla. Dep't

of Corr., No. 3:16-CV-889-J-39JRK, 2018 WL 1535721, at *5 (M.D.

Fla. Mar. 29, 2018) (citing Bertolotti v. State, 476 So. 2d 130,

134 (Fla. 1985)). "An attorney is allowed to argue reasonable

inferences from the evidence and to argue credibility of witnesses

or any other relevant issue so long as the argument is based on

the evidence." Id. (citing Miller v. State, 926 So. 2d 1243, 1254–

55 (Fla. 2006)).

Here, the Prosecutor's closing offered the jury her view of

the evidence. The Prosecutor asked the jury to draw logical

inferences from the evidence presented at trial and find the

Petitioner guilty. The Prosecutor's closing did not violate

clearly established Supreme Court law or encourage a result based

on an unreasonable determination of the facts considering the

evidence at Petitioner's trial. Thus, any objection would have

been meritless and failure to make a meritless objection is not ineffective assistance of counsel. Denson, 804 F.3d at 1342.

### *Ground Eight*

Petitioner claims Trial Counsel was ineffective for failing to object or file a motion in limine to prohibit the State from introducing prejudicial inferences that mislead the jury. Respondent argues that Petitioner failed to establish he is entitled to relief on Ground Eight.

During Petitioner's trial, Ralph Goodwin testified that he gave Petitioner a police taser about a month before the crime. (Ex. 9, Vol. IV at 625-26). A cartridge was found at the murder scene that matched the cartridges used by the police taser given to Petitioner. (Ex. 9, Vol. III at 494-Vol. IV at 495).

The prosecutor stated in closing:

> You heard from Detective Ellis as well as Jamie Thorpe and as well as Ms. Caron, the crime scene tech. That the taser used in this case was one that actually had projectiles. And it was unique because it was a police issued taser. It had green doors. This isn't something everyone has. It was unique.
>
> What did Mr. Goodwin just tell you? Well, LCSO had been out to his house, and there was a scuffle and they dropped a taser, and it was found. He gave that taser to the Defendant, that unique police issued taser, which just happens to end up being used at the murder of Eric.

(Ex. 9, Vol. IV at 639-40).

No one testified that the taser used at the murder scene was the same one that Petitioner was given by Goodwin. Petitioner argues the inference by the Prosecutor during her closing argument misled the jury to believe that it was the Petitioner's taser. Petitioner argues that the closing statements prejudiced the jury because the fact that Goodwin gave the Petitioner the same model taser strongly inferred that the taser was the same one used during the robbery.

Petitioner raised this issue in his Rule 3.850 motion. The Post-Conviction Court held:

> In the eighth allegation, Defendant alleges that counsel was ineffective for falling to file a motion in limine or contemporaneously object to the State introducing prejudicial inferences that served to confuse or mislead the jury. Specifically, Defendant is referring to the evidence concerning a police officer taser that a witness, Goodwin, testified he gave to Defendant a month before the incident. Defendant admits that no one testified that the taser cartridge at the scene of the crime was from the one and the same taser, but that the jury could have inferred that from the testimony.
>
> However, as the State points out, that is the job of the jury to draw conclusions from the evidence that is presented. Goodwin testified that he gave the police taser to Defendant. As Defendant, himself, admits no one testified that the taser cartridge at the scene of the crime was from the one and the same taser. Furthermore, attorneys are allowed during closing argument to draw logical inference from the evidence and to advance all legitimate arguments. <u>Matthews</u>, at 901. Therefore, counsel could not have been

> ineffective for failing to object or to raise
> a meritless issue. *Schoenwetter*, at 546.
> Likewise, it is highly doubtful that a motion
> in limine would have been granted to exclude
> relevant and admissible evidence.

(Ex. 9, Vol. I at 659). The Second District Court of Appeal affirmed per curium.

While a prosecutor is expected to refrain from offering her personal views on a defendant's guilt or innocence, "a prosecutor is free to suggest during oral argument what the jury should conclude from the evidence before it." United States v. Rivera, 780 F.3d 1084, 1100 (11th Cir. 2015). Thus, the Prosecutor's closing did not violate clearly established Supreme Court law or encourage a result based on an unreasonable determination of the facts about the taser.

The taser evidence was relevant, and the probative value outweighed any prejudice to the Petitioner. See Edouard, 485 F.3d at 1346. Any objection to the testimony about the taser evidence would have been meritless, and failure to make a meritless objection is not ineffective assistance of counsel. Denson, 804 F. 3d at 1342. Similarly, the decision not to file a motion in limine did not unfairly prejudice the Petitioner's case. The decision was a strategic decision which was reasonable given the evidence in the record.

***Ground Nine***

Petitioner alleges that although Trial Counsel filed a motion for new trial, the motion was inadequate. Petitioner sets forth seven factual assertions he believes Trial Counsel should have raised in the motion for new trial:

1. The State's witness Zachary Holmes' testimony was not credible.

2. The State's witness Jamie Thorpe's gave inconsistent testimony.

3. Michael Holmes' testimony that Petitioner had provided him with a 9mm handgun the day before the murder. Petitioner argues Holmes' testimony was self-serving and designed to transfer blame for the shooting onto Petitioner.

4. The State failed to present enough evidence that Petitioner acted as a principle. Petitioner argues that not a single witness could testify that he had conscious intent to commit the crime.

5. The identification of Co-Defendant Tuttle was not reliable.

6. The improper remarks by the Prosecutor in closing argument likely contributed to the jury's verdict.

7. The introduction of prejudicial evidence that confused or misled the jury.

(Doc. #1 at 14-15). Respondent responds that it is unreasonable to suggest that any more detailed or more artfully worded motion or argument would have resulted in a different outcome.

In denying Petitioner's Rule 3.850 motion, the Post-Conviction Court held:

In the ninth allegation Defendant alleges that
counsel was ineffective for falling to file an
adequate motion for a new trial. Specifically,
Defendant alleges that counsel should have
pointed to the false and perjured testimony of
Zachary Holmes; Jamie Thorpe's inconsistent
testimony and unreliable identification of
Tuttle; and Michael Holmes' testimony about
the 9mm handgun. Based on these issues,
Defendant claims that the State failed to
prove that "Ragland acted as a principle
[sic]". *See* Defendant's motion p.33. However,
this allegation is conclusively refuted by the
record. *See* Court Exhibit G, March 30, 2012,
Transcript of Proceedings, attached hereto,
which concerns the hearing on the Motion for
New Trial. After hearing arguments of counsel,
the trial court weighed all the evidence and
concluded that a new trial was not warranted.

(Ex. 9, Vol. I at 660).   The Second District Court of Appeal

affirmed per curium.

Petitioner speculates that the outcome of the motion for a

new trial would have been different had Trial Counsel argued as

proposed in Ground Nine.   Speculative allegations in support of

claims of ineffective assistance of counsel are insufficient. See

Cox v. Sec'y, DOC & Fla. Attorney Gen., No. 2:13-CV-65-FTM-29CM,

2015 WL 7015426, at *10 (M.D. Fla. Nov. 12, 2015) (quoting Bradford

v. Whitley, 953 F.2d 1008, 1012 (5th Cir. 1992)( Petitioner cannot

satisfy the second prong of Strickland with mere speculation and

conjecture).

The purpose of analyzing the reasonableness of counsel's

representation under Strickland's first prong is not to grade

counsel's skill; rather, it is to determine whether the counsel's

performance was constitutionally acceptable. "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." Crisp v. United States, No. 2:07-CR-95-FTM-34SPC, 2014 WL 1285894, at *12 (M.D. Fla. Mar. 31, 2014) (quoting Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

In his motion for a new trial, Trial Counsel argued that the verdict was contrary to the weight of the evidence because of the unreliable testimony of Zach Holmes, and that the Court erred in allowing the testimony of Detective Ellis regarding her elimination of other suspects. Trial Counsel argued that Detective Ellis relied on broad conclusions to eliminate other suspects without testifying as to how she reached those conclusions. (Ex. 1, Vol. VIII at 316). Based on the record before the Court, Trial Counsel's motion for a new trial was reasonable given the evidence presented at trial. Petitioner failed to establish either deficient performance or prejudice under Strickland; therefore, Ground Nine is denied.

### Grounds Ten and Eleven

In Ground Ten, Petitioner claims Trial Counsel rendered ineffective assistance of counsel by failing to object that conviction of the principle felon must precede or accompany that

of one charged as being accessory before the fact. In Ground Eleven, Petitioner claims Trial Counsel rendered ineffective assistance by failing to raise an inconsistent verdict objection based on his conviction for second degree murder while his Co-Defendant was convicted of manslaughter.

Respondent argues Grounds Ten and Eleven are unexhausted and procedurally barred because they were not raised in the State Court and the time to do so has expired. Petitioner does not dispute that Grounds Ten and Eleven are unexhausted but argues they are not procedurally barred based upon the Supreme Court's holding in Trevino v Thaler, 569 U.S. 413, 429 (2013). The Trevino Court relied on the reasoning from Martinez v. Ryan, 566 U.S. 1, 17 (2012), which held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 569 U.S. at 429. In such instances, the prisoner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Krum v. Sec'y, Fla. Dep't of Corr., No. 2:13-CV-422-FTM-29MRM, 2016 WL 2610195, at *9 (M.D. Fla. May 6, 2016).

In Ground Ten, Petitioner argues that Trial Counsel rendered ineffective assistance by failing to object to his conviction of second-degree murder since conviction of a principle felon must precede or accompany that of one charged as being accessory before the fact. Petitioner's argument fails. The common law rule espoused by Petitioner was rendered obsolete in 1957 with the enactment of Fla. Stat. § 776.011, (1957), later renumbered § 777.011. See Brown v. Florida, 672 So. 2d 861, 864 (Fla. 3d DCA 1996).

Petitioner's Martinez argument in Ground Eleven also fails because his Co-Defendant had not yet been tried and convicted, so Trial Counsel could not have objected to an inconsistent verdict. Petitioner was charged with second-degree murder. Second-degree murder is the "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." Fla. Stat. § 782.04(2). The record before the Court shows that Petitioner was an active participant in the robbery that led to the victim's murder and supports Petitioner's conviction for second-degree murder.

Petitioner has not shown cause and prejudice, or a fundamental miscarriage of justice to overcome the procedural default. No exception, including Martinez, overcomes Petitioner's procedural

default of Grounds Ten and Eleven. Consequently, Ground Ten and Eleven will be dismissed as unexhausted and procedurally barred.

### CERTIFICATE OF APPEALABILITY

Petitioner is not entitled to a certificate of appealability on either petition. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Harrison v. Bell, 556 U.S. 180, 184 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003)(citations omitted). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

Accordingly, it is hereby

**ORDERED:**

1. Petitioner Terry Ragland's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. #1) is **DENIED.**

2.    The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___23rd___ day of September 2019.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-2

Copies:

All Parties of Record